**UNITED STATES, Appellee,**

v.

**Gregory McCLAIN, Private First Class U.S. Army, Appellant.**

**No. 47554/AR.**

**CM 443716.**

U.S. Court of Military Appeals.

May 5, 1986.

For Appellant: *Captain Robert W. Wiechering* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Major Lawrence F. Klar, Captain Ann M. Kanamine* (on brief); *Captain James E. Girvin.*

For Appellee: *Captain John F. Burnette* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Andrew D. Stewart, Captain Richard J. Fadgen* (on brief); *Major Thomas J. LeClair.*

*Opinion*

EVERETT, Chief Judge:

Private First Class McClain was tried in November and December 1982 by a general court-martial sitting at Nellingen Barracks, Federal Republic of Germany. After he had pleaded guilty to rape and forcible sodomy, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925, respectively, he was sentenced to a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the con-

vening authority reduced the confinement to 7 years but in all other respects he approved the trial results. The Court of Military Review affirmed, over the dissent of Judge Watkins. Before us now is this issue:[1]

WHETHER APPELLANT WAS DENIED DUE PROCESS OF LAW BY THE SYSTEMATIC EXCLUSION OF ENLISTED PERSONNEL BELOW THE RANK OF E–7 AND OF JUNIOR OFFICERS AS COURT–MARTIAL MEMBERS.

I

On August 10, 1982, Colonel Carroll Tichenor, the staff judge advocate for VII Corps, transmitted to the commanding general a disposition form recommending that "[t]o avoid constant interruptions and last minute selections of court members, it is acceptable that you choose a standing list of enlisted court members" for service on general and special courts-martial in the Stuttgart area. "These enlisted members would serve on a court should an accused request an enlisted jury." Enclosed was a selection list containing the name, grade, organization, job title, date of rank, rotation date, race, and sex of 54 enlisted persons, who ranged from sergeant major (E–9) down through specialist four (E–4) and had been nominated by subordinate commanders. However, the memorandum advised the commanding general that

you may select anyone in your jurisdictional area and are not bound by the inclosed selection list of individuals nominated by your subordinate commanders. In making your selections, you should consider those nominees best qualified for duty by reason of age, education, training, length of service and judicial temperament (Art. 25, UCMJ). All nominees appear to meet these requirements.

Colonel Tichenor also recommended that the commander "select four primary enlisted members from the inclosed list . . . and four alternates . . . to serve on future general courts-martial when requested in the Stuttgart area." Likewise, he suggested that "four primary enlisted members . . . and four alternates" be selected to "serve on future BCD special courts-martial when requested in the Stuttgart area."

Consistent with the memorandum from his staff judge advocate, the convening authority appointed two standing panels with enlisted persons—one panel to serve in general courts-martial and the other in special courts-martial authorized to adjudge a bad-conduct discharge. Each person selected had been on the list; and each was in the rank of E–7, E–8, or E–9.

McClain's case was referred in October 1982 to a general court-martial composed solely of officers. Later, when appellant requested that the membership of his court-martial include enlisted persons, the convening authority added four enlisted members. These were in the top three grades—a first sergeant, two master sergeants, and a sergeant first class—and had previously been selected by the convening authority as primary or alternate enlisted members for general courts-martial. A major, a captain, and a warrant officer, who had been originally detailed to hear the case, were relieved by the convening authority. Two colonels who had originally been appointed to the court-martial but were unavailable for the trial were replaced with two other colonels.

After appellant's arraignment, defense counsel contested the manner of appointment of the enlisted members. A motion for appropriate relief sought withdrawal of charges, utilization of an all-inclusive process for nominating and selecting enlisted members, and selection of a court-martial panel representing a cross-section of the entire enlisted community. Appellant claimed that, on the advice of his staff judge advocate, the convening authority had improperly excluded enlisted persons below the grade of E–7 and junior officers

---

1. A second issue concerning credit for pretrial confinement has been decided by *United States*

*v. Allen,* 17 M.J. 126 (C.M.A.1984). 17 M.J. 284.

from appointment to court-martial panels in violation of Article 25, UCMJ, 10 U.S.C. § 825.

The defense counsel noted, however, that McClain's request for enlisted members was "contingent" on the military judge's ruling on the motion for appropriate relief. The military judge agreed that, if he ruled adversely to McClain, he would allow appellant the opportunity to decide whether he still wished to have enlisted members on the court.

Determination of the defense motion was based chiefly on this stipulation as to Colonel Tichenor's expected testimony:

I have been the Staff Judge Advocate for HQ, VII Corps since July 1980. During this period of time, I have observed that there have been a variety of unusual sentences from both officer and enlisted member court-martial panels. Some of these sentences included two to five years confinement at hard labor with no discharge, total forfeiture of all pay and allowances and restoration to duty, and some very lenient sentences where the individual had been convicted of serious felony crimes. There were repeated rumors that many of these seemingly unusual sentences stemmed from young officers and young enlisted members who had little experience in the military. Two senior officers who had served on several court-martial panels advised me as they were departing this command that the junior officers and junior enlisted members of the panels were most often the proponents and advocates of these very lenient and unusual sentences.

At the time I presented LTG Livsey with the list of nominees (attached) for him to select the General and BCD Special officer and enlisted members in August 1982, I advised him of the criteria that was to be used in making his selection, i.e., those who were the best qualified by reason of age, education, training, length of service, and judicial temperament. I further reminded him of the nature of the information that had come to my attention that indicated that the junior officers and enlisted members did not possess these qualifications and that he should consider this information at the time he made his selections. I recommended that he give preference to selecting those individuals who were older and had been in the service longer, over those who were relatively junior in age and experience. LTG Livsey specifically asked whether such action was lawfully within his discretion and I advised him that it was if he determined that such a selection was appropriate under the criteria outlined to him in the DF (attached). LTG Livsey considered the unusual sentences at the time he made his selections. On 30 November 1982, I discussed the selection of court-martial panel members with LTG Livsey. He stated that when he made the initial selection of the officer and enlisted members of the court-martial panels, he followed the advice given in the DF from me dated 10 August 1982. He stated that he selected those he believed were best qualified by reason of age, education, training, length of service, and judicial temperament. He also stated that he remembered my advice that he consider those individuals who were older and had been in the service longer when making his decisions in order to obtain a panel that was mature, responsible, and discerning in their judgment.

On 2 December 1982, I presented LTG Livsey with the accused's request that at least ⅓ of the court members appointed to hear his case be enlisted members. I advised LTG Livsey that all of the members of the Primary and Alternate Enlisted GCM Panels for Stuttgart were available. However, I advised that he should not select CSM Abe due to the fact that he was a Command Sergeant Major in the Accused's chain of command, and therefore was familiar with the case. I recommended that LTG Livsey detail 1SG Viger, MSG Stanfill, MSG Flowers, and MSG Brown to sit on the court-martial panel, and that three officers be viced. LTG Livsey asked if SFC Johnson

was available to sit on the court on the date of trial. I advised him that he was. LTG Livsey then selected 1SG Viger and MSG Stanfill from the Primary Enlisted GCM Panel for Stuttgart, and SFC Johnson and MSG Flowers from the Alternate Enlisted GCM Panel for Stuttgart. LTG Livsey indicated that MAJ Hollingsworth, CPT Stockhausen, and CW4 Eads should be viced from the panel.

The military judge found "as a matter of fact, that Colonel Tichenor's concern is not unusual sentences, but light sentences.... Fair reading of his testimony establishes that." Moreover, "as a matter of fact ... General Livsey, the convening authority, remembered the advice given to him by Colonel Tichenor, that older service members be given thought—that is the selection of older service members be given thought when attempting to obtain a panel of mature, responsible and discerning officers." Finally, he determined, "as a matter of fact, that General Livsey adhered to the standards of Article 25 in making his selection, that he was given an array of nominees which included soldiers in the rank of E-5 and above, and therefore I do not find that this selection was tainted or in violation of Article 25." The motion was denied.

Thereupon, defense counsel withdrew the request for enlisted membership and elected instead an all-officer court-martial panel. In doing so, he stated for the record:

Solely because of the ruling, Your Honor, we would elect to change to an officer panel. The accused would like to state specifically, for the record, that he would prefer a fair and properly selected enlisted panel, but in as much as that has not been provided, would at this time request an officer panel.

As the military judge had promised, he permitted withdrawal of the request for enlisted members; and the membership of the general court-martial which finally tried appellant consisted of two colonels, a lieutenant colonel, three majors, and three captains.

The majority of the Court of Military Review acknowledged that in his attack on the selection process "[a]ppellant has raised an issue of consequence." However, they reasoned that, by withdrawing his request for enlisted membership and not complaining as to the selection process of the officer panel which ultimately sentenced him, "appellant has removed the selection issue in this case." Unpublished opinion at 2. Judge Watkins, dissenting, insisted that, by invoking waiver, the majority had failed in its "duty to consider" an issue that "was extensively litigated at trial, specifically ruled upon by the trial judge, and further considered at the level of the Initial Reviewing Authority," where "the record of trial (and also the Review of the Staff Judge Advocate) plainly reflects that the final composition of the court-martial represented a 'forced choice of forum' following the judge's denial of the defense motion for what was described as a fair and properly selected panel with enlisted members." Id. at 3.

II

A

In United States v. Greene, 20 U.S.C. M.A. 232, 233, 43 C.M.R. 72, 73 (1970), defense counsel had stated "[a]t the outset of trial, during an Article 39(a) [UCMJ, 10 U.S.C. § 839(a)] session ... that although the accused was requesting that he be tried by the military judge alone, he was doing so reluctantly and only because of 'certain infirmities' which he found in the composition of the court selected to try him." Thereafter, counsel presented information that the convening authority had appointed to the general court-martial "only ... high ranking commissioned officers—three colonels and six lieutenant colonels." In holding that the conviction should be set aside because of the method of selecting members that had been employed, the Court quoted favorably this language from the Court of Military Review's decision in that case:

We start by recognizing that an accused has an absolute right to trial be-

fore a properly constituted court with members. *Accordingly, this accused's conviction cannot stand if he abandoned his right (and was tried by military judge alone) to avoid trial before an improperly selected panel.* Article 16, Code, supra; Manual for Courts-Martial, supra, paragraph 4; *United States v. Hedges,* 11 USCMA 642, 29 CMR 458 (1960); cf. *United States v. Beer,* 6 USCMA 180, 19 CMR 306 (1955).

20 U.S.C.M.A. at 239, 43 C.M.R. at 79 (emphasis added).

 This same rationale applies here. Just as an appellant cannot be forced to abandon his right to trial by members because of improper selection of those members, he cannot be forced to abandon his right to enlisted members because of their improper selection. Otherwise, an accused would be faced with the dilemma of choosing between trial by enlisted members whom the convening authority had improperly selected or waiving defense objection by withdrawal of a request for enlisted members. To place the accused in such a position would have a chilling effect on the exercise of a right granted by the Congress. We agree fully with Judge Watkins' dissenting opinion that the issue posed by McClain's motion for appropriate relief should have been decided on the merits by the Court of Military Review.

### B

 Even though McClain may contest the selection of the panel, he is not free to attack the findings of guilty. He entered provident pleas of guilty pursuant to a pretrial agreement; and there is no indication that the manner of selecting court members induced this course of action. Accordingly, we are left only with the issue of whether he is entitled to a rehearing on sentence. *United States v. Daigle,* 1 M.J. 139 (C.M.A.1975).

### C

 The Constitution requires trial by jury in federal criminal cases, *see* art. III, § 2; amend. VI; and this requirement has been construed to call for a representative cross-section for juries. *See, e.g., Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). However, courts-martial have never been considered subject to the jury-trial demands of the Constitution. *Cf. Ex parte Milligan,* 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866). Instead, qualifications for service on courts-martial have been prescribed by Congress in the exercise of its power under Article I, § 8, cl. 14 of the Constitution.

The chief qualification for court-martial service under the Articles of War as they existed at the time of World War I was status as an officer. Article of War (A.W.) 4 authorized "[a]ll officers in the military service of the United States, and officers of the Marine Corps when detached for service with the Army by order of the President ... to serve on courts-martial." However, an officer was ineligible to sit when he was "the accuser or a witness for the prosecution." *See* A.W. 8. According to Manual for Courts-Martial, U.S. Army, 1917, "Chaplains, veterinarians, dental surgeons, and second lieutenants in the Quartermaster Corps are not in practice detailed as members of courts-martial." Para. 6(b).

In 1920, this sentence was added to Article of War 4:

> When appointing courts-martial the appointing authority shall obtain as members thereof those officers of the command who, in his opinion, are best qualified for the duty by reason of age, training, experience, and judicial temperament; and officers having less than two years service shall not, if it can be avoided without manifest injury to the service, be appointed as members of courts-martial in excess of the minority membership thereof.

App. 1, A.W. 4, Manual for Courts-Martial, U.S. Army, 1928. *See generally* Rigby, *Military Penal Law: A Brief Survey of the 1920 Revision of the Articles of War,*

12 J.Crim.L. & C. 84 (1922). This was one of several changes made in the Articles of War after World War I—partly as an outgrowth of the Crowder-Ansell dispute. *See* Brown, *The Crowder-Ansell Dispute: the Emergence of General Samuel T. Ansell,* 35 Mil.L.Rev. 1, 2–22 (1967).

After World War II, the Elston Act (Pub.L. No. 759, 62 Stat. 604 (1948)) made further amendments to the Articles of War. Article of War 4 was revised to authorize the appointment of enlisted persons to serve as members of general and special courts-martial if the accused was an enlisted person and requested enlisted membership on the court. In connection with this change, enlisted persons were also made subject to the provision that court members should not have "less than two years' service . . . if it can be avoided without manifest injury to the service."

Article 25(d)(2) of the Uniform Code is similar to Article of War 4[2] in its direction that "[w]hen convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Under this codal provision length of service was to be considered by the convening authority; but Congress did not seek to prescribe any minimum for such service. For the first time "education" was specified as a criterion for appointment to courts-martial.

As this Court noted in *United States v. Greene,* 20 U.S.C.M.A. at 236–37, 43 C.M.R. at 76–77, Article 25(d)(2) "should not be read in a vacuum, however, for the Congress of the United States, has by virtue of the passage of Article 25(a) and (b), Code, *supra,* made eligible for membership on courts-martial '[a]ny commissioned officer on active duty' and '[a]ny warrant officer on active duty' if, in the latter instance, the accused is of a lesser grade than that of commissioned officer." Moreover, all

enlisted members are eligible to serve, except for those in "the same unit as the accused." Art. 25(c)(1). Besides the statutory preference for members senior to the accused, Art. 25(d)(1), "[n]ot a single condition is inserted with regard to . . . [members'] rank or position within the military community, except those very general and personal factors which are to be considered by the convening authority in the exercise of his discretion." *Id.* at 238, 43 C.M.R. at 78.

This Court decided in *Greene* that a court-martial panel had been improperly selected when its membership consisted of three colonels and six lieutenant colonels. The Court reasoned that, in view of the codal provisions for eligibility to court membership and the standards for selection of court members, a convening authority violated the Code by appointing only very senior officers to the court-martial. The Court also cited *United States v. Hedges,* 11 U.S.C.M.A. 642, 29 C.M.R. 458 (1960), where because of its "composition . . . the court-martial . . . had the distinct appearance of being 'hand-picked' by the Government." *See* 20 U.S.C.M.A. at 237, 43 C.M.R. at 77.

Later, in *United States v. Daigle, supra,* Judge Cook, writing for a unanimous Court, held improper the convening authority's fixed policy of excluding lieutenants and warrant officers from the membership of courts-martial. He emphasized:

> Discrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system and violates the Uniform Code. Except for the statutory preference for exclusion of persons in a rank lower than the accused, all ranks are eligible to serve on a court-martial. [Citations omitted.] When rank is used as a device for deliberate and systematic exclusion of qualified persons, it becomes

**2.** The Articles for the Government of the Navy did not prescribe in similar detail the qualifica-

tions for court member.

an irrelevant and impermissible basis for selection.

1 M.J. at 140–41 (footnote omitted).

More recently, in *United States v. Yager*, 7 M.J. 171, 172 (C.M.A.1979), Judge Cook explained:

> In *Daigle*, the Court was confronted with a situation where a group of otherwise qualified individuals was excluded from membership on a court-martial solely on the basis of rank. There was no demonstrable relationship between the excluded ranks and Article 25(d)(2), which requires a convening authority to detail those "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament."

He did not find *Daigle* inconsistent with a system of appointing enlisting members which excluded grades E–1 to E–3[3] because he concurred with the court below in that case that their disqualification "is an embodiment of the application of the statutory criteria." *Id.* at 172. His rationale parallels to some extent that used by Chief Judge Quinn in upholding the procedures used in the Army for selecting enlisted members, even though statistics in that service revealed that no one in a grade below E–4 had ever served as a court-martial member and almost 90% of the enlisted members had been selected from grades of E–7, E–8, or E–9. *United States v. Crawford*, 15 U.S.C.M.A. 31, 35 C.M.R. 3 (1964).[4] He wrote:

> Here, the only purpose in looking to the senior noncommissioned ranks was to obtain persons possessed of proper qualifications to judge and sentence an accused. There was no desire or intention to exclude any group or class on irrelevant, irrational, or prohibited grounds. In short, the evidence leaves no room to doubt that the selection process was designed only to find enlisted men qualified for court service. The senior noncommissioned ranks provided a convenient and logically probable source for eligi-

bles. To refer first to those ranks for prospective members is not an impermissible choice.

15 U.S.C.M.A. at 40, 35 C.M.R. at 12.

▮ In the present case, the method of selection used by the convening authority resulted in the nomination of 54 enlisted persons—none of whom was below the grade of E–4. However, appellant was an E–3, so the exclusion of the lower three enlisted grades was permissible under Article 25(d)(1)—which directs that, "[w]hen it can be avoided," court members should not be "junior to ... [the accused] in rank or grade." On the other hand, the appointment to the court-martial only of persons in the upper three grades was not proper.

In some situations, the legality of an action depends on its impact—regardless of the intent with which the act is performed. *See, e.g., Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In other situations, legality hinges on the presence or absence of a specific intent. *Cf. Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The benign intent of the convening authority was stressed in upholding the appointment of the court members in *Crawford*. It was emphasized that "no desire or intention to exclude any group or class on irrelevant, irrational, or prohibited grounds" existed; and "the selection process was designed only to find enlisted men qualified for court service." Presumably the outcome in that case would have been quite different if the purpose of the convening authority had not been what it was.

Here, the findings made by the military judge make clear that the staff judge advocate intended to exclude junior members because he believed they were more likely to adjudge light sentences. He intended to utilize the statutory criteria set forth in Article 25(d)(2) of the Code—especially length of service—to obtain court member-

---

3. Judge Perry concurred in the result in *Yager;* Chief Judge Fletcher did not participate.

4. Judge Kilday concurred in the result and Judge Ferguson dissented.

ship that he believed would adjudge heavier sentences. However, the history of that statutory provision makes clear that Congress never intended for the statutory criteria for appointing court members to be manipulated in this way. Indeed, the controversy which led to the revision of Article of War 4 in 1920 concerned the achievement of fairer, not heavier, court-martial sentences. Indeed, after both World Wars there has been extensive concern that wartime court-martial sentences had been too heavy.

Because the selection of court members who will adjudge heavy sentences is not a basis for selection authorized by Article 25(d)(2), it would seem—by negative implication—to be either "irrelevant" or "prohibited." Such selection cannot be properly described as "designed only to find enlisted men qualified for court service." Instead, in this case it was "designed" to pick from 54 enlisted members in grades E–4 through E–9, who had been nominated by subordinate commanders, those who were most likely to punish accused persons severely.

Perhaps the application of the standards set forth in Article 25(d)(2) leads naturally to the selection of court members who are more likely to impose heavier punishments than would be true if different standards were used or no standards at all. Perhaps, for example, old, educated court members are harsher than young, ignorant court members. However, we need not speculate on such matters—as to which social scientists might differ—because we are concerned with intent, rather than impact.[5] That intent—which the military judge found to exist—was incompatible with Article 25(d)(2); and implementation of that intent in selecting the court members violated the Code.

In addition to violating the Code, we note certain ancillary disadvantages of the selection process employed. First, it created an appearance that the Government was seeking to "pack" the court-martial against appellant. *Cf. United States v. Hedges, supra.* This appearance was enhanced by the circumstance that not only were the senior enlisted members appointed to the court but also the junior officer members were excused. Second, this selection deprived enlisted members in grades E–4 through E–6 of the opportunity to obtain experience as court-martial members. Third, it indicated a lack of confidence by the convening authority and his staff judge advocate in the ability of junior officers and enlisted members to adjudge a sentence that would be fair to both the accused and the Government.

Finally, the methods employed here condoned and encouraged violations of Article 51(a) of the Code, 10 U.S.C. § 851(a), which provides for secret written ballots in trials by court-martial. According to the stipulated testimony of Colonel Tichenor, "Two senior officers who had served on several court-martial panels advised me as they were departing this command that the junior officers and junior enlisted members of the panels were most often the proponents and advocates of these very lenient and unusual sentences." We doubt the appropriateness of commanders or staff judge advocates discussing with court members their findings or sentences, for such discussions run the risk of transgressing Article 37, UCMJ, 10 U.S.C. § 837. Moreover, because court-martial findings and sentences need not be unanimous, such discussions may disclose how particular members voted—especially if a member who participates in the discussion did not vote for the findings or sentence ultimately decided on by the court-martial.

We fully understand Colonel Tichenor's concern about the "unusual" sentences that had been adjudged. If, however, the sentences had seemed "unusual" to the senior members of the court-martial while deliberations were underway, it is somewhat surprising that they could not have persuaded the other members as to the defects of these sentences. In any event, we do not believe that the two senior mem-

---

**5.** Of course, sometimes the probable impact of an act helps illuminate the intent of the act.

bers should have discussed with the staff judge advocate which members—or class of members—serving on the court-martial were primarily responsible for those "unusual sentences."

A staff judge advocate has a legitimate interest in knowing what factors influenced a court-martial to reach a particular result, so that in future cases there will be improvements in the selection of cases for trial and in the presentation of evidence and argument. However, only discussions reasonably designed to accomplish such improvements should take place.[6] Civilian juries, which usually operate under requirements of unanimity and with panels that usually do not serve over long periods of time, involve different considerations from courts-martial. However, even in the civilian community, many courts seek to dissuade jurors from discussing with others the reason for their verdicts. In light of Article 51, we are sure that in military justice "silence is golden," insofar as discussions between court members and staff judge advocates are concerned.

The military judge found that the convening authority "adhered to the standards of Article 25 in making his selection." This finding, however, is not adequate to purge from the selection process the staff judge advocate's improper purpose of avoiding lenient sentences. In this connection, we note that—because "[d]iscrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system and violates the Uniform Code," see *United States v. Daigle*, 1 M.J. at 140—this Court is especially concerned to avoid either the appearance or reality of improper selection.

In *Greene* the conviction was reversed because "we are not convinced that an improper standard was not used for the selection of the members of this court"; and any "doubt must be resolved in favor of

the accused." 20 U.S.C.M.A. at 238, 43 C.M.R. at 78. In view of the position and responsibilities of a staff judge advocate, *United States v. Brown*, 13 M.J. 253 (C.M. A.1982); *Cooke v. Orser*, 12 M.J. 335 (C.M. A.1982), we now are "not convinced" that the convening authority did not share Colonel Tichenor's purpose to eliminate "lenient sentences."[7] Certainly, in this regard there is a reasonable doubt which "must be resolved in favor of the accused."

As we construe the judge's findings, they do not exclude the possibility that the convening authority also wanted to avoid "lenient sentences." Indeed, according to the stipulation of testimony, the convening authority "considered the unusual sentences at the time he made his selections," so there is every reason to believe that he, too, was seeking to achieve the result favored by the staff judge advocate.

A convening authority has great discretion in selecting court members—although as a practical matter he must rely heavily on his subordinates for recommendations. Broad as it is, however, this discretion cannot be used for purposes not authorized by the Code. One such prohibited purpose is to provide a court-martial membership that will achieve a particular result as to findings or sentence. In this case, the exclusion of lower rank enlisted members—as well as the replacement of junior officer members—were done in order to obtain a court membership less disposed to lenient sentences. This purposeful conduct was inconsistent with the spirit of impartiality contemplated by Congress in enacting Article 25 of the Code and with the limitation on command influence contained in Article 37. Therefore, the results of this conduct cannot be allowed to stand.

### III

The decision of the United States Army Court of Military Review is reversed as to

---

6. Thus, a staff judge advocate might ask a court member whether trial counsel adequately presented his evidence or argued the case.

7. We do not impugn in any way the good faith of the convening authority. According to the

stipulated testimony, General Livsey "specifically asked" his staff judge advocate as to the lawfulness of certain aspects of the selection process. Unfortunately, the advice he received was in error.

sentence. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence may be ordered.

COX, Judge (concurring in the result):

I disagree with any language in the principal opinion which appears to *per se* prohibit the appointment of a court-martial panel consisting entirely of senior officers or enlisted servicemembers. The convening authority is required to select as members those who "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. § 825(d)(2). Based on the statutory selection criteria, the best qualified members in some cases may well be senior officers and enlisted personnel. Indeed, in this case I am convinced beyond any reasonable doubt that the convening authority was sensitive to his statutory duties to appoint members who "in his opinion ... [were] best qualified ..." in accordance with Article 25(d)(2).

I recognize that when a convening authority has systematically excluded a group of otherwise qualified servicepersons from being considered for court-martial membership for an irrational or inappropriate reason, we have found the selection process to be improper. *See United States v. Daigle,* 1 M.J. 139 (C.M.A.1975) (convening authority did not consider statutory criteria, but only nominees from lower commander); and *United States v. Greene,* 20 U.S.C. M.A. 232, 43 C.M.R. 72 (1970) (convening authority considered only O–5s and O–6s for membership).

The deliberate selection or exclusion of a certain class of servicepersons for the purpose of increasing the severity of the sentence is wrong. A proper concern, however, is the selection of servicepersons who will adjudge a sentence that is fair and just, considering the circumstances of the particular case.

Because of the keen sensitivity shown by the convening authority, we normally would apply the presumption of regularity and assume that the convening authority was aware of his responsibilities and performed them properly. *See United States v. Moschella,* 20 U.S.C.M.A. 543, 43 C.M.R. 383 (1971). We cannot do that here.

I concur in the result here because the military judge found, as a *matter of fact,* that the staff judge advocate recommended selection based upon concerns that the sentence might be too lenient. The only concern the staff judge advocate should have had was *fairness.* Whether the sentence is lenient or harsh is subjective and properly the concern of: (1) the court-martial; and (2) the convening authority exercising clemency—otherwise Congress would have authorized the convening authority to pick those members he thought most likely to award the harshest sentences. If staff judge advocates and convening authorities would carry out their pretrial and post-trial duties in accordance with the law and entrust what happens during the trial to the military judge and the court-martial members, we would not have to resolve allegations of tampering with the outcome of a trial.

If, as the military judge concluded, the staff judge advocate recommended to the convening authority that he give preference to selecting senior officers or enlisted members as a means of avoiding lenient sentences and further advised that sentence enhancement was a permissible consideration when selecting court-martial members, then that advice was in error. In the absence of evidence to the contrary and based upon the military judge's findings, we can only assume that the convening authority followed this faulty advice.

Thus, there is an unresolved appearance of impropriety in the selection process. Under *Daigle* and *Greene,* reversal of the sentence is appropriate to uphold the essential fairness and integrity of the military-justice system. Accordingly, I concur in the result reached by the Chief Judge.