UNITED STATES, Appellee,

v.

Specialist Four William C. McLAUGH-LIN, 358–66–9186, United States Army, Appellant.

ACMR 8800201.

U.S. Army Court of Military Review.

30 Nov. 1988.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Stephanie C. Spahn, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Major Gary L. Hausken, JAGC, Captain James K. Reed, JAGC (on brief).

Before HOLDAWAY, THORNOCK, and CARMICHAEL, Appellate Military Judges.

OPINION OF THE COURT

THORNOCK, Senior Judge:

Pursuant to his pleas, the appellant was convicted by a general court-martial, composed of officer and enlisted members, of distribution and possession of marijuana in violation of Article 112a, Uniform Code of

Military Justice, 10 U.S.C. § 912a (Supp. IV 1986) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances and reduction to the grade of E–1. In keeping with a pretrial agreement, the convening authority approved the sentence but suspended the confinement in excess of fourteen months for a period of fourteen months, with an automatic remission provision.

## I

At trial, the defense counsel moved for appropriate relief, asserting that there was a systematic removal of "junior officers" when the accused requested enlisted members on the panel and, further, that none of the enlisted members detailed to the panel in response to the accused's request were below the grade of E–7. The military judge required written briefs and oral arguments on the motion by both the defense and the prosecution. In the brief in support of his motion, the trial defense counsel cited *United States v. Daigle*, 1 M.J. 139 (C.M.A.1975); *United States v. McClain*, 22 M.J. 124 (C.M.A.1986); and *United States v. Greene*, 43 C.M.R. 72 (C.M.A. 1970). In arguing that the convening authority's policy for excusal of officer members and selection of enlisted members was flawed, the defense counsel cited instructions by the convening authority to the staff judge advocate (SJA) as follows: "When requested by an accused, at least four enlisted members will be nominated for detail to a general court and three for a special court. *After taking into consideration already excused members, excusal of an equal number of the most junior officers will be recommended for my approval.*" (emphasis added.) In addition to challenging the legality of the convening authority's instruction, the defense counsel also noted that, after review of all "convening orders detailing court for enlisted panels in 1987 at Fort Carson, the defense has discovered that a Staff Sergeant is the only soldier below the grade of E–7 to be detailed to an enlisted panel and this only occurred on one occasion."

The SJA was called as a witness by the government to explain the details of the court member selection process used at Fort Carson. After extensive review of a rather complicated procedure, the military judge found, *inter alia*, that there was a command policy "of taking off the most junior officers to make room for the enlisted people, although this policy is not always followed." Further, he held:

> I state again I find there was no fixed policy of impermissibly excluding certain categories of individuals from court membership, there's been no improper standard used for selection. The convening authority has detailed those members who in his opinion are best qualified for duty by reason of age, education, training, experience, length of service, and judicial temperament. I find there has been full compliance with the Code and Manual in this regard, and therefore, the defense motion is denied.

## II

On appeal, the court member selection process used at Fort Carson is the basis for a single assignment of error, as set forth below:

THE CONVENING AUTHORITY VIOLATED ARTICLE 25, UNIFORM CODE OF MILITARY JUSTICE, BY EXCLUDING THE MOST JUNIOR OFFICERS, AS A MATTER OF POLICY, WHEN APPELLANT REQUESTED A PANEL INCLUDING ENLISTED MEMBERS.

Notably on appeal, there is no assertion that the composition of the enlisted panel or the selection process for enlisted members was violative of Article 25, UCMJ, 10 U.S.C. § 825. We, nevertheless, will treat that aspect of the case as it was asserted at trial.

A summary of the panel selection process used at Fort Carson is necessary for proper disposition of this issue. For various unchallenged reasons, a decision was made to utilize four standing panels for the trial of general and "bad-conduct" special courts-martial. Lists of 216 officer and 113 enlisted members of all grades (except E–1 through E–3) were submitted to the con-

vening authority, Major General James R. Hall, Jr., the Commander of the 4th Infantry Division (Mechanized) and Fort Carson, for his selection of court members.

The names were requested by the SJA from the Adjutant General of Fort Carson with the caveat that the nominees have at least six months remaining in their assignment to Fort Carson. The officer and enlisted nominees were submitted on 1 and 10 September 1987, respectively. Considering the case load, duties, training cycles and requirements, and other vagaries of an active Army post, the SJA recommended to the Commander that he choose thirty-six officers and thirty-two enlisted members, as well as forty additional officer members as alternates to serve for the next six months. The Commander selected thirty-seven officers and thirty-two enlisted members, along with forty alternate officer members.[1] The Commander was reminded of the Article 25(d)(2), UCMJ criteria and that he was not limited to the venire submitted to him, but that he could select any member of his command for court-martial duty. The Commander selected officers and warrant officers of all grades except WO–1 and CW–3, and enlisted members of all grades except E–1 to E–5 (as noted earlier, members in the grades of E–1 through E–3 were not listed). Based on guidance from the Commander, the SJA also drafted instructions for the Commander to sign, outlining to the SJA how the panels were to be formulated, rotated, excused, and the substitution process that was to be used for officer members when enlisted members were requested. These instructions provided (1) that in the case of officer excusal or unavailability, an officer of equal rank would be substituted, if possible, from the preselected alternate list; (2) that at least four enlisted members would be nominated when the accused requested an enlisted panel; and (3) that when enlisted members were requested, the most junior officer members would be excused and replaced by the enlisted members. It is the latter instruction which was challenged at trial and which resulted in the assignment of error now before this court.

In his testimony at trial, the SJA pointed out that he made recommendations as to the number and grades of selectees which were not always followed. He was adamant that the Commander always made the decision utilizing the proper Articles 25, 25(d)(2), UCMJ criteria. The SJA was challenged concerning the language "excusal of an equal number of the most junior officers will be recommended for my approval." His testimony was that by specifying the same number it removed the possibility of the SJA picking certain officers and ensured that proper statutory selection requirements were met.

### III

We turn now to the asserted error. The appellant has not provided any demonstrable evidence of improper motive or intent or that the complained of policy violated Article 25(d)(2), UCMJ.

■ Initially, we note that there is a presumption of regularity which attaches to the official acts of the convening authority. *United States v. Hodge*, 26 M.J. 596 (A.C.M.R.1988) (citing *McClain* at 133); *United States v. Cunningham*, 21 M.J. 585, 586 (A.C.M.R.1985), *petition denied*, 22 M.J. 275 (C.M.A.1986).

■ This presumption can only be overcome by clear and convincing evidence that there was a policy violative of Article 25, UCMJ. The evidence of record shows that the convening authority was repeatedly reminded of the Article 25, UCMJ requirements. There is no evidence of mendacity whatsoever. We hold that, in keeping with established precedent, without some showing of impropriety, there is no requirement that every economic, racial, or ethnic class or persons of all military grades be appointed as members of courts-martial. *See McClain* at 128; *United States v. Credit*, 2 M.J. 631 (A.F.C.M.R. 1976), *rev'd on other grounds*, 4 M.J. 118

---

1. The SJA specifically noted the number of selectees as an example of the Commander's understanding of his independent responsibility in selecting court members.

(C.M.A.1977), *appeal after remand,* 6 M.J. 719 (A.F.C.M.R.1978), *aff'd,* 8 M.J. 190 (C.M.A.1980). *See also Batson v. Kentucky,* 476 U.S. 79, 85, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (citing *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880)). The mere recitation of categories alone is not enough to establish either error or mendacity. *See Hodge* at 598. In *McClain,* the court observed that the legality of the exclusion of a certain group from courts-martial hinged on the presence or absence of specific intent. *Id.* at 130 (citing *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). Further, by specifying criteria for selecting members, Congress limited the discretion of the convening authority by "negative implication" to the Article 25, UCMJ criteria. *McClain* at 131. *But see United States v. Smith,* 27 M.J. 242 (C.M.A.1988).

Significantly, junior officers (company grade officers) as a class were not excluded from the system used for presentation of court members to the convening authority. The convening authority's guidance to the SJA eliminated the discretion in selection or removal of members from all but the convening authority himself. Moreover, the instruction addressed excusal of the most junior officer members without mentioning the grade or rank of the officer member. Fairly read, that instruction may apply to date of rank within a specific grade. Accordingly, the guidance to the SJA was to recommend to the convening authority removal on the basis of seniority rather than grade or rank. Seniority, even within each grade, relates directly to the statutory factors enumerated in Article 25(d)(2), UCMJ.

## IV

In the case before us, the appellant concedes that the procedure used at Fort Carson lacks the "intent found in *McClain.*" Presumably, that concession addresses the impermissible intent to select members based upon their likelihood to not adjudge light sentences. Certainly there is nothing before us in this case that suggests the sort of problem condemned in *McClain.*

The record demonstrates that the convening authority knew and used the Article 25(d)(2), UCMJ criteria, and that he limited the choosing of actual membership to himself alone. The somewhat elaborate system of court member selection was properly constructed to ensure compliance with complicated constitutional and statutory requirements, as well as numerous judicial pronouncements concerning court member selection. We find the convening authority acted with the proper discretion and we see no impermissible intent or action on the part of the convening authority or his staff. In this case, the judicial imperative of "demonstrable relationship between the excluded [members] and the criteria of Article 25(d)(2)" for all grades has been met. *McClain* at 130 (citing *United States v. Yager,* 7 M.J. 171, 172 (C.M.A.1979)). There has been no showing of a systematic exclusion of any class of officer or enlisted membership that was inconsistent with constitutional, codal or judicial requirements. There was no "deliberate and systematic exclusions of qualified persons" from membership on court-martial panels. *Daigle* at 141.

Accordingly, we find no error and the findings of guilty and the sentence are affirmed.

Chief Judge HOLDAWAY and Judge CARMICHAEL concur.