UNITED STATES, Appellee,

v.

Staff Sergeant Wardell REDMAN,
Jr., 342–46–1550, United States
Army, Appellant.

ACMR 9001418.

U.S. Army Court of Military Review.

27 Aug. 1991.

For Appellant: Major Michael J. Kelleher, JAGC, Captain Timothy M. Lawlor, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before De GIULIO, HAESSIG, and ARKOW, Appellate Military Judges.

OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a general court-martial consisting of officer and enlisted members which was convened by the Commander, 2d Infantry Division, Camp Casey, Korea. Pursuant to his pleas, he was found guilty of one specification of black-marketing and one specification of borrow-

ing $1100.00 from a subordinate in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 (1982) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge. Acting within the terms of a pretrial agreement, the convening authority approved the sentence.

Initially, this case came before us on its merits. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), appellant asserted, *inter alia*, that

> [He] was prejudiced by the convening authority's attempt, subsequent to preferral of charges, to select a panel more likely to adjudge a discharge. Merely allowing the original panel to hear the case does not remove the taint, because this panel was picked by the same convening authority. Furthermore, this panel may have known that they had been temporarily relieved of the duty to serve as panel members due to previous sentences which the convening authority believed to be too light.

As a consequence this court specified the following issues:

### I

WHETHER, AS RAISED IN ISSUE THREE PURSUANT TO *UNITED STATES V. GROSTEFON*, 12 M.J. 431 (C.M.A.1982), THE CONVENING AUTHORITY'S EARLIER ATTEMPT TO SELECT A PANEL MORE LIKELY TO ADJUDGE A DISCHARGE TAINTED THE PANEL WHICH HEARD THE APPELLANT'S CASE.

### II

WHETHER A HEARING IN ACCORDANCE WITH *UNITED STATES V. DuBAY*, 37 C.M.R. 411 (C.M.A.1967), IS NECESSARY TO OBTAIN SUFFICIENT FACTS TO RESOLVE THIS ISSUE? *SEE UNITED STATES V. CRUZ*, 25 M.J. 326, 328 n. 1 (C.M.A.1987).

We hold that there is sufficient reliable evidence before this court to decide the issue without a *DuBay* hearing [1] and that the convening authority's attempt to select a new panel did not taint appellant's trial.

On 2 March 1990, Major General C.G. Marsh made his first selection of court members following his assumption of command of the 2d Infantry Division in November 1989. As in prior selections in the 2d Infantry Division, court members were to serve for a five month period. After selection, the court members served on six courts-martial, the result of which caused some dissatisfaction in the Office of the Staff Judge Advocate. Two cases were of particular concern. In one case, a military policeman was found not guilty of an offense, despite, according to the trial counsel, his in-court admission to all the elements of the offense.[2] The other, the *Bell* case, proved to be the case "that broke the camel's back." In that case, the key player in a scheme to steal money from the finance office involving several soldiers was found guilty of larceny of $17,000.00 and conspiracy to steal $4,000.00. He was sentenced to one-month confinement and reduction to the grade of Private E1.

It appears that trial counsel and the Staff Judge Advocate viewed the problem to be caused by certain members of the court-martial. They attempted to exclude these members by the challenging procedure but their attempts failed because of the denial of challenges by the military judge.[3]

---

1. In order to resolve the issue of command influence, this court admitted appellate exhibits, including a copy of the transcript of *United States v. Lissade*, a case where the command influence motion was litigated. A copy of an investigation into the court selection and affidavits from the court members in this case and the convening authority were also admitted.

2. This soldier was convicted of another offense, false swearing, and sentenced to a one-grade reduction.

3. Evidence before this court indicates that some challenges were directed toward minority members. Most accused tried by the court were also minorities. The military judge appears to have denied those challenges to avoid the *"Batson* issue." *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *United States v. Moore,* 28 M.J. 366 (C.M.A.1989). Evidence before us leads us to conclude that the Staff Judge Advocate, rather than recognizing the trial judge's action was to avoid error, blamed the

Out of frustration in the inability to correct the perceived problem, an unfortunate chain of events was set in motion. The Staff Judge Advocate, Lieutenant Colonel William C. Kirk, attached a note to the result of the trial in the *Bell* case which was sent to Major General Marsh. The note indicated that the result was disturbing and that they should talk about it. In later conversations it was concluded that action was required because of what the Staff Judge Advocate termed as "unusual results" and what Major General Marsh termed as "general dissatisfaction and disappointment in the performance of the court", and "results that fell outside the broad range of being rational." [4] The Staff Judge Advocate advised Major General Marsh that he could examine the qualifications of court members to determine if he had picked the "best qualified" under the criteria set forth in Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2).[5]

Consequently, on 21 April 1990, Major General Marsh selected a new court and referred pending cases to it. On 23 April 1990, in a case referred to the new court, *United States v. Lissade*, a case in which the Staff Judge Advocate and the convening authority testified candidly, the military judge, addressing a command influence motion, found an appearance of impropriety.

On 10 May 1990, after two pretrial sessions, appellant's case was tried by court-martial. As a consequence of the results

---

trial judge for the inability of trial counsel to correct their perceived problem through the challenge process.

4. The following statements are taken from testimony in *Lissade*, the investigation into alleged command influence and affidavits provided this court. The Staff Judge Advocate stated: "We did discuss [with Major General Marsh] after the *Bell* case the result of that particular case because of—because it was so very unusual." Further, he stated:

Well, [Major General Marsh] was concerned because he thought that they were unusual. I was concerned also because I thought the results of the case were unusual and it brought to mind the fact that we were having unusual experiences with the panel in other cases as well and he said, well,—essentially, what he had asked was is there anything that is permissible for me to do at this point. He asked my advice on that. I told him that the only thing I believed that he could do under the circumstances is if he had doubts or questions with regard to the qualifications of the members that he selected, it would be permissible for him to review the qualifications of the members to insure himself as to whether he had, in fact, picked people that he believed to be best qualified, essentially viewing that as a continuing duty on his part as opposed to a one time matter. In response to that, he said essentially, okay, well, I'll review their qualifications again and as a result of that, I prepared documents for him again that resulted in the selection on 21 April.

In *Lissade*, Major General Marsh testified:

[In] three or four of the recent cases that were tried by military court, I was not satisfied with the result.

\*   \*   \*   \*   \*   \*

I wasn't satisfied that justice had been served. We were—you know, we were going through the court-martial process and we were winding up with Article 15 punishments.

\*   \*   \*   \*   \*   \*

[W]e were just—had general dissatisfaction and disappointment in the performance of the court, and decided that we were going to give it another try.

In an affidavit submitted to this court, Major General Marsh stated:

If sentences are clearly irrational, if they don't pass what I call the common sense test, then soldiers lose confidence in the justice system.... The problem in ... the MP case and the *Bell* case was that the results in those cases were an aberration because they fell outside that broad range of being rational ... LTC Kirk came on line to point out this aberration, we talked it over, and he suggested that I select a new panel if I thought the panel I had selected earlier was unqualified.

5. Article 25(d)(2), UCMJ, provides:

When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament. No member of an armed force is eligible to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or a counsel in the same case.

of the *Lissade* case, the convening authority agreed "to go back to the original panel." Trial defense counsel stated that "[appellant] is not inclined to make the motion and has decided that he is willing to waive the motion." After specific inquiry by the military judge, appellant personally indicated that he had "no problem or concerns that [he would] be tried by a fair and impartial court." The trial proceeded and appellant was found guilty in accordance with his pleas and sentenced to a bad-conduct discharge.

As a result of the military judge's finding in the *Lissade* case, an investigation into the court selection was ordered by supervisory authority. On 11 May 1990, the investigation of the alleged command influence was completed. The investigating officer concluded that the selection process of 21 April 1990 was incompatible with Article 25(d)(2), UCMJ.[6] On 11 May 1990, the Commander, Eighth United States Army withdrew authority to convene special and general courts-martial from the Commander, 2d Infantry Division.[7] As a consequence of his order withdrawing courts-martial authority, appellant's case was transferred to another jurisdiction for a recommendation and initial action.

Before this court, appellant contends that, although he was tried by the original court-martial, the court members knew that the convening authority was unhappy with them, that the convening authority had relieved them and appointed another court, and therefore they gave appellant a sentence harsher than they otherwise would have done.

■ Addressing the second specified issue first, we find it unnecessary to order a *DuBay* hearing in this case. We have before us the candid testimony of Lieutenant Colonel Kirk and Major General Marsh on the issue in a prior case and the investigation. Also before us are affidavits provided by the court members and Major General Marsh. Although we recognize that a *DuBay* hearing is the preferred method to obtain information to resolve allegations of command influence,[8] we are satisfied that we have sufficient reliable information before us to resolve the issue and that a *DuBay* hearing in this case would serve no useful purpose.

■ In reference to the remaining specified issue, we must examine the actions by the Convening Authority and his Staff Judge Advocate. We believe *United States v. McClain*, 22 M.J. 124 (C.M.A.1986) is helpful. In that case, it had been noted by the Staff Judge Advocate that, by rumor, unusual sentences stemmed from young officers and enlisted members who had little experience in the military. These unusual sentences were considered lenient. The convening authority was advised to select individuals utilizing the criteria of Article 25(d)(2) in order to correct the imposition of unusual sentences. The court stated that, "the history of that statutory provision makes clear that Congress never intended for the statutory criteria for appointing court members to be manipulated in this way." *Id.* at 131. The court further stated,

> Perhaps the application of the standards set forth in Article 25(d)(2) leads naturally to the selection of court members who are more likely to impose heavier punishments than would be true if different standards were used or no standards at all. Perhaps, for example, old, educated court members are harsher than young, ignorant court members. However, we need not speculate on such matters ... because we are concerned with intent,

6. The investigating officer found no violation of Article 37 or 98 of the Code, 10 U.S.C. §§ 837, 898. In his view there must be some sort of communication to a court member or members to be a criminal violation of the Code. This court does not necessarily agree with that conclusion, but since the question of a criminal violation is not before us, we will leave that issue for an appropriate case.

7. The Eighth United States Army Judge Advocate's quick and effective action in this case avoided the possible massive command influence problem that developed in the 3d Armored Division cases. *See United States v. Thomas*, 22 M.J. 388 (C.M.A.1986).

8. *See United States v. Cruz*, 25 M.J. 326, 328 n. 1 (C.M.A.1987).

rather than impact. That intent ... was incompatible with Article 25(d)(2), and implementation of that intent in selecting the court members violated the Code." *Id.*

A convening authority's broad discretion cannot be used for the prohibited purpose of providing a court membership that will achieve a particular result as to finding and sentence. *Id.* at 132. The court concluded that, "This purposeful conduct was inconsistent with the spirit of impartiality contemplated by Congress in enacting Article 25 of the Code and with the limitation on command influence contained in Article 37." *Id.*

In the case before us, concerning selection of the new panel, we can only conclude that the "unusual results" were findings of not guilty and lenient sentences contrary to the government representatives' expectations. We further find that the standards of Article 25(d)(2) were intentionally manipulated to change the court membership in order to achieve a particular result as to findings and sentence. We hold, as the United States Court of Military Appeals did in *McClain*, that such purposeful conduct is inconsistent with the spirit of impartiality of Article 25 and the limitation on command influence contained in Article 37 of the Code.

Having found the selection of the new members was unlawful command influence, we must determine if those unlawful acts tainted appellant's trial. We note that appellant's pleas of guilty limit our inquiry to the appellant's sentence. *See United States v. Thomas*, 22 M.J. 388, 395 (C.M.A.1986). We also note that at trial appellant's counsel expressed satisfaction with proceeding with his court-martial stating, "[Appellant] is not inclined to make the motion and has decided that he is willing to waive [it]. He is satisfied with the remedy that has already been given.... Since yesterday, the government agreed to go back to the original panel."

In *United States v. Hilow*, Chief Judge Sullivan stated, "We cannot join this judicial evisceration of Articles 37 and 25(d)(2). This is not a case where the tainted candidates were not detailed to appellant's court-martial or *where appellant, being aware of the command subordinate's manipulation, still chose trial by members."* *United States v. Hilow*, 32 M.J. 439, 442 (C.M.A.1991) (emphasis added). From this language we can only conclude that waiver may be applied in an appropriate case. We believe this is that case. Further, in the case before us, affidavits from the court members and Major General Marsh indicate that the court members neither were told nor were aware of the convening authority's dissatisfaction with their performance. The sentence imposed, a bad-conduct discharge, is not harsh, even considering other sentences imposed by these court members. Under the circumstances of this case, we hold that where appellant was fully aware of attempts to manipulate the court selection process but was satisfied with the remedy provided, and still chose trial by court members, he waived any objection to that process. Even absent the specific waiver in this case, we find the error was harmless because appellant was sentenced by court members unaware of the convening authority's dissatisfaction with them and his attempts to manipulate the selection process. *See Thomas*, 22 M.J. at 396.

Other assertions of error raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Judge HAESSIG and Judge ARKOW concur.