UNITED STATES, Appellee,

v.

Staff Sergeant William R. HODGE, 356–50–0695, United States Army, Appellant.

ACMR 8601112.

U.S. Army Court of Military Review.

29 April 1988.

---

per, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC (on brief).

Before DeFORD, LYMBURNER, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members of distribution of cocaine and possession with the intent to distribute cocaine in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (Supp. II 1984). His sentence to a dishonorable discharge, confinement for two years, forfeiture of $400.00 per month for two years, and reduction to Private E–1 was approved by the convening authority.

Appellant asserts four issues on appeal. Having carefully considered the allegations of error, we conclude they are without merit. One of the issues asserted, however, warrants discussion.

### I

At trial, appellant moved for appropriate relief requesting that the trial be stayed on the ground that members had been selected improperly. Manual for Courts–Martial, United States, 1984, Rule For Courts-Martial [hereinafter R.C.M.] 912(b)(1).[1] Appellant requested a hearing pursuant to R.C.M. 912(b)(2)[2] to require the trial counsel to demonstrate that members were not selected improperly. The basis of the request was the absence of black members on the court-martial panel. Appellant is a black soldier.

For Appellant: James R. Klimaski, Esquire (argued); Lynn I. Miller, Esquire, Captain Debra D. Stafford, JAGC (on brief).

For Appellee: Captain Gary L. Hausken, JAGC (argued); Colonel Norman G. Coo-

1. Rule for Courts–Martial 912(b)(1) provides: *Motion.* Before the examination of members under subsection (d) of this rule begins, or at the next session after a party discovered or could have discovered by the exercise of diligence, the grounds therefor, whichever is earlier, that party may move to stay the proceedings on the ground that members were selected improperly.

2. Rule for Courts–Martial 912(b)(2) provides: *Procedure.* Upon a motion under subsection (b)(1) of this rule containing an offer of proof of matters which, if true, would constitute improper selection of members, the moving party shall be entitled to present evidence, including any written materials considered by the convening authority in selecting the members. Any other party may also present evidence on the matter. If the military judge determines that the members have been selected improperly, the military judge shall stay any proceedings requiring the presence of members until members are properly selected.

In support of his motion, defense counsel advised the court that he had been informed by a Captain (CPT) P, allegedly from the Office of Equal Opportunity, Military District of Washington, that the racial composition of the Army included 85.75% white officers, 10.28% black officers, and the remaining portion of other minorities; CPT P had also advised counsel that "the percentage is almost identical" in the Military District of Washington, the situs of the trial. Government counsel did not contest these assertions. Appellant also asserted in written pleadings submitted on the motion that trial counsel informed defense counsel prior to trial that a minority member would be appointed to appellant's panel; that trial counsel later informed defense counsel that no black soldiers would be available to serve on appellant's panel; and, finally, that the chief of military justice informed defense counsel that no black soldiers had been nominated by subordinate commands to serve on appellant's court-martial. Appellant, at various times, cited the Sixth Amendment, the Fifth Amendment, the Fourteenth Amendment, and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as support for his position.[3]

The trial judge ruled that the defense had not made a sufficient showing to warrant a hearing under R.C.M. 912(b)(2). The judge found, *inter alia*, that the defense had made no offer of proof "that the court-martial panel selected was selected under a practice providing the opportunity for discrimination."

## II

At the outset, we must determine whether the military judge abused his discretion when he determined that appellant's offer of proof was insufficient under the rules prescribed for trials by court-martial. Rule for Court Martial 912(b)(2) provides a procedure and mode of proof for resolving a motion challenging selection of court members. While the rule states that the motion will contain "an offer of proof of matters which, if true, would constitute improper selection of members," it does not otherwise prescribe an applicable legal standard.

In *United States v. Barbeau*, 9 M.J. 569 (A.F.C.M.R.1980), *petition denied*, 9 M.J. 277 (C.M.A.1980), the court was required to address an allegation concerning lack of personal jurisdiction. In that case, the trial defense counsel recited a chronology of events which served as a basis of the personal jurisdiction argument. The court, in considering the issue, rejected the defense counsel's statements on the motion. The court ruled that "the recitations by counsel did not qualify as an 'offer of proof' ... and could not be considered as proof of their contents." *United States v. Barbeau*, 9 M.J. at 571. *See also State v. Sullivan*, 553 S.W.2d 510 (Mo.Ct.App.1977) (mere statements of conclusions of counsel are insufficient). The court's stance mirrored the oft-stated position that a court may reject an offer of proof if it is not sufficiently specific or is in the form of general statements or conclusions. *See generally* Annot., 89 A.L.R.2d 279 (1963). We view the proper procedure as requiring the proponent to state the names and addresses of proposed witnesses that he or she is prepared to call on the motion, to give a summary of their expected testimony, and to advise the court that he or she is prepared to call those witnesses and present that testimony at the discretion of the court. Only when specific relevant and admissible testimony is demonstrated on

---

3. Initially, appellant made two allegations concerning the selection process (see Appellate Exhibit IX and X): first, that there was purposeful discrimination against blacks in the panel selection process; and/or, second, that there was not a cross-sectional representation of the military community on appellant's panel. The latter allegation, which is tested by the requirements delineated by the Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 365, 99 S.Ct. 664, 669, 58 L.Ed.2d 579 (1979), is inapplicable in the military context. *United States v. Carter*, 25 M.J. 471, 473 (C.M.A.1988). "[C]ourts-martial have never been considered subject to the jury-trial demands of the Constitution. *Cf. Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866)." *United States v. McClain*, 22 M.J. 124, 128 (C.M. A.1986). Thus, it seems appellant must rely on a "discrimination in the selection-process" theory if he is to be successful.

the record is an "offer of proof" satisfied.[4] *See* Mil.R.Evid. 103(a)(2); *Andrews v. Bechtel Power Corporation*, 780 F.2d 124 (1st Cir.1985), *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986).

Reviewing the record of the case at bar, appellant did not disclose any witnesses whose proposed testimony would justify an inference of invidious racial discrimination. He did not state that CPT P was prepared to testify or that CPT P was in a position to know the racial composition of the Army. His opinion as to the racial composition within the Military District of Washington has little value unless he was prepared to testify to those facts and he had a basis to believe that those facts were true. His unsubstantiated opinion that "the percentage is almost identical" was an additional failure to satisfy his burden.

### III

### A

Military appellate courts have long held that discrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system. *United States v. McClain*, 22 M.J. 124, 132 (citing *United States v. Daigle*, 1 M.J. 139, 140 (C.M.A.1975)). Exclusion of members on the grounds of race has long been considered an improper criteria in the selection of court-members. *See United States v. Crawford*, 35 C.M.R. 3, 13 (C.M.A.1964).

▮▮▮▮ In this case, appellant's offer of proof had to overcome the presumption of regularity which attaches to the official acts of the convening authority. *United States v. McClain*, 22 M.J. at 133 (Cox, J., concurring in the result); *United States v. Cunningham*, 21 M.J. 585, 586 (A.C.M.R. 1985), *petition denied*, 22 M.J. 275 (C.M.A. 1986). This presumption extends to the relevant official acts of subordinate commanders and staff members. *See United States v. Young*, 49 C.M.R. 133, 137 (A.F. C.M.R.1974). In order to overcome this

presumption, the appellant was required to show by clear and convincing evidence that the Convening Authority had violated Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2).

"[T]he 'invidious quality' of governmental action claimed to be racially discriminatory 'must ultimately be traced to a racially discriminatory purpose.'" *Batson v. Kentucky*, 476 U.S. at 93, 106 S.Ct. at 1721 (quoting *Washington v. Davis*, 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976)). It has long been established that neither the Constitution of the United States nor the Uniform Code of Military Justice requires that every economic, racial or ethnic class or persons of all military grades be appointed as members of a court-martial. *United States v. McClain, supra; United States v. Credit*, 2 M.J. 631 (A.F.C. M.R.1976), *rev'd. on other grounds*, 4 M.J. 118 (C.M.A.1977), *appeal after remand*, 6 M.J. 719 (A.F.C.M.R.1978), *affirmed*, 8 M.J. 190 (C.M.A.1980). *See also Batson v. Kentucky*, 476 U.S. at 85, 106 S.Ct. at 1716 (citing *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880)).

In *McClain*, the court considered allegations that court members were selected through the use of improper criteria. The court specified the standard by which the alleged systematic exclusion of a particular group from service on courts-martial would be tested. Citing both federal and military cases, the court emphasized that military law condemns the purposeful manipulation of the criteria for the selection of court members specified in Article 25, UCMJ. The court observed that the legality of the exclusion of a specific group from courts-martial hinges on the presence or absence of specific intent. *United States v. McClain*, 22 M.J. at 130 (citing *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and *Washington v. Davis, supra*). The court's decision was based upon an interpretation of Article 25, UCMJ. By specifying criteria for selecting members, Congress limited the discretion of the convening authority by "negative

---

**4.** The appellate courts must be able to evaluate the validity of the proffered evidence in the event the trial court refused the offer of proof.

implication"; selection may be made only upon the enumerated factors of age, education, training, experience, length of service, and judicial temperament. *United States v. McClain, supra.*

### B

Having established that appellant does not have a *"per se"* right to have a person of his own race appointed as a member of his court-martial and that he must establish specific intent to discriminate, we now consider the sufficiency of appellant's claims that the convening authority purposefully excluded black members from the appellant's court-martial. The Congress of the United States delegated to the President under Article 36, UCMJ, 10 U.S.C. § 836, the authority to prescribe pretrial, trial and post-trial procedures to include modes of proof for trial by court-martial.[5] R.C.M. 912(b)(2) requires in part an adequate "offer of proof be made which, if true, would constitute improper selection of members."

■ We find that, even assuming the accuracy of appellant's statistics, the absence of black members from the limited number of officers detailed does not establish the *substantial* underrepresentation required to raise an inference of discriminatory intent. *See Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). The absence of a black member from the panel detailed to hear appellant's case bespeaks random chance as much as it does discriminatory intent. Therefore, taking into account "all possible explanatory factors", appellant's statistical offering does not establish discriminatory intent. *Cf. Batson v. Kentucky,* 476 U.S. at 95, 106 S.Ct. at 1722 (quoting *Alexander v.*

*Louisiana,* 405 U.S. 625, 630, 92 S.Ct. 1221, 1225, 31 L.Ed.2d 536 (1972)).

We have no doubt that an accused is not limited to showing systematic discrimination as a sole means of challenging invidious racial discrimination. He may use systematic discrimination, if such exists, or he may show purposeful discrimination from the facts arising in his own case. *Batson v. Kentucky, supra.* However, appellant's statements failed totally to show any intent on the part of the convening authority to purposefully discriminate against appellant by using race as an improper criteria in selecting the members of appellant's court-martial. At best, appellant's statements establish only that 10.28% of the officers assigned to the Military District of Washington were black and none were appointed to appellant's court martial.[6]

Consequently, appellant has failed to show any intent on the part of the convening authority to invidiously discriminate against this appellant by purposefully excluding members of the black race in the selection process. In substance, our finding mirrors that of the military judge.

### IV

We believe we would be remiss if we failed to at least briefly comment concerning our brother's dissent in this case. Judge Smith disagrees with the majority opinion in two essential areas. First, he believes that appellant's offer of proof was entirely adequate under R.C.M. 912(b)(2). Our respective positions in this matter are clearly set forth and we believe that no further comment is required. Secondly, he believes that, if appellant had proved his offer, an inference of invidious racial discrimination would have been established

---

5. *See* R.C.M. 502(a) (qualifications and duties of members); R.C.M. 503(a) (detailing members); R.C.M. 505(c) (change of members); and R.C.M. 912 (challenge of selection, nomination, and challenge of members).

6. The court will not pass judgment or otherwise second-guess trial defense counsel's pretrial investigative efforts. We do note that he requested the court to provide the investigative data he should have requested during discovery. See Appellate Exhibit IX. He did not pursue these

materials when he appeared before the court. Nor is there any indication that he interviewed any of the subordinate commanders who nominated officers from which the convening authority made his selection. We note that his proffer of proof did not contain any documentation concerning the selection of members. *See* R.C.M. 912(a)(2) (Defense counsel is entitled to copies of any written materials considered by the convening authority in selecting the court members in his case).

because appellant's race was not represented in the roster of those nominated, no member of the appellant's race was selected to sit on the appellant's court-martial, and the practice employed in the selection process provided an opportunity for discrimination. Consequently, he believes that, once the inference was established, the burden to prove otherwise would shift to the government. Judge Smith agrees on one hand that the appellant is not entitled *per se* to have members of his own race sit as members of his court-martial and that proportionate underrepresentation in and of itself does not give rise to purposeful discrimination. Nevertheless, he finds a prima facie case from the absence of blacks on the panel and the list of nominees when this fact is coupled with the mandate of Article 25, UCMJ, which creates an opportunity to discriminate by requiring personal selection by the convening authority.

His views are based upon his analysis of *Whitus v. Georgia, Castaneda v. Partida, Washington v. Davis, Alexander v. Louisiana*, all *supra*. These are premised on the violations of the Equal Protection Clause; however, the Supreme Court of the United States fashioned its analyses on established facts in those cases to cure abusive practices in the state systems by which the grand and petit jury venires were selected. Consequently, the procedural requirements of these decisions are directed at protecting a citizen's right to trial by jury. *See Batson v. Kentucky*, 476 U.S. at 86, 106 S.Ct. at 1717.

As early as 1866, the Supreme Court ruled that the right to trial by jury is preserved to everyone accused of crime who is not a member of the Army, Navy, or in actual service in the militia. *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 123, 18 L.Ed. 281 (1866). "[T]he [constitutional] rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty...." *Burns v. Wilson*, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953) (plurality opinion). Military accused are tried not by a jury of their peers, but by a panel of their best qualified superiors. Accordingly, it has long been held that this right to trial

by jury is inapplicable to members of the armed forces. *United States v. McClain*, 22 M.J. at 129; *Ex parte Quirin*, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3 (1942). *See also Reid v. Covert*, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). Pursuant to article I, section 8, clause 14, of the United States Constitution, Congress was granted near plenary power when defining the rules and regulations for the armed forces. *See Chappell v. Wallace*, 462 U.S. 296, 301, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983). As the Court recently pointed out, " 'judicial deference is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged.' " *Solorio v. United States*, — U.S. ——, 107 S.Ct. 2924, 2931, 97 L.Ed.2d 364 (1987), and *Goldman v. Weinberger*, 475 U.S. 503, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986) (both quoting *Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981)).

The mere existence of an opportunity for racial discrimination does not, *per se*, create that discrimination. The standard enunciated in *McClain* that an intentional exclusion of a particular group from panel service must be shown, strikes a proper balance between soldiers' constitutional rights, military necessity, and the congressional powers to raise, support, and govern by regulation, the armed forces of the United States.

We have considered the remaining assignments of error and the issues personally asserted by appellant and find them to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge LYMBURNER concurs.

SMITH, Judge, dissenting:

Appellant moved, at trial, for "a hearing to determine whether or not a fair racial composition exists" on the panel of officers selected to hear his case. In his proffer, made both verbally and in writing, he offered the following: (1) accused is black; (2) no black officers were detailed to sit as

members at his court-martial; [1] (3) defense counsel had been informed that there were no black officer alternates available for the trial of the case; (4) the Chief of Criminal Law had informed counsel that no black officers had been nominated for service in the instant court-martial by any subordinate command in the Military District of Washington (M.D.W.); (5) counsel had been informed by the "Office of Equal Opportunity" that over ten percent of the officers in the Army were black and that the percentage of black officers assigned to M.D. W. was about the same; (6) on 16 October 1986 the trial counsel had informed the defense that "she understood that a black officer would be available and that efforts were being made to procure the services of a black officer for this Court."

In support of his proffer trial defense counsel argued:

> Once we have shown what we have shown, then it is incumbent upon the Government to go forward with an affirmative showing of the evidence as to how this happened, why it happened, and what could have been done to avoid the problem. The remedy here is not dismissal. We can't seek a dismissal. I don't think the Code provides for that. The only remedy is a stay.

Trial counsel responded that the defense was required to make an offer of proof "that improper methods were used in ...

1. Ten officers were initially detailed to sit as members at appellant's court-martial. Three of the ten were excused by the convening authority and an additional three were detailed.

2. Although defense counsel's motion for a hearing was not clearly stated, the military judge understood, and I understand the motion to be one requesting that he be entitled to present the information contained in his offer of proof as evidence at a hearing under the provisions of the Manual for Courts–Martial. The majority attempts to establish new proof and procedural requirements in defining a "proper offer of proof." Nothing within the Rules for Court–Martial or the Manual for Courts–Martial requires that an offer of proof be more than a statement outlining that which the moving party intends to prove. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 912 [hereinafter M.C.M.1984 or Manual and R.C.M. respectively] provides:

> (b) *Challenge of selection of members.*

the selection of members" and that "[i]t's for the defense to make some affirmative proof that there was a conscious choice to exclude blacks." The military judge ruled as follows:

> I find that the offer made by the defense to show improper selection of court members is insufficient to entitle them to a hearing as would be provided under Rule For Courts–Martial 912(b)(2).[2] The defense has failed to show that the Convening Authority's court member selection procedure violated Article 25 by systematically excluding black officers. I further find that the defense has not shown an offer of proof that the court-martial panel selected was selected under a practice providing the opportunity for discrimination. As observed in the case of *The United States versus Credit,* which was cited 2 M.J. 631, an Air Force Court of Military Review case, 1976, "Neither the Constitution of the United States nor the Uniform Code of Military Justice requires that every economic, racial or ethnic class, or persons of low ranking (sic) grades, be appointed to a military jury ..." to the contrary, "... the law provides that only significant and identifiable groups not be systematically excluded from the jury selection procedure." Therefore the defense motion for appropriate relief is denied.

(1) *Motion.* Before the examination of members under subsection (d) of this rule begins, or at the next session after a party discovered or could have discovered by the exercise of diligence, the grounds therefor, whichever is earlier, that party may move to stay the proceedings on the ground that members were selected improperly.

(2) *Procedure.* Upon a motion under subsection (b)(1) of this rule containing an offer of proof of matters which, if true, would constitute improper selection of members, the moving party shall be entitled to present evidence, including any written materials considered by the convening authority in selecting the members. Any other party may also present evidence on the matter. If the military judge determines that the members have been selected improperly, the military judge shall stay any proceedings requiring the presence of members until members are properly selected.

Appellant now asserts that "the military judge erred in refusing to conduct a hearing [and to allow him to present evidence] concerning the racial composition of the court-martial nominees."

## I

Rule for Courts–Martial 912(b)(2) requires a moving party, when challenging the selection of members, to make an offer of proof "which, if true, would constitute improper selection." Upon meeting that requirement, the moving party is entitled to present evidence. In this case, the military judge, in denying a hearing, stated that the defense had failed to aver that (1) the convening authority's selection procedure had systematically excluded black officers and (2) the court-martial panel was selected under a practice providing the opportunity for discrimination. I believe that both the military judge at trial, as well as the majority on appeal, applied improperly restrictive standards previously rejected by the United States Supreme Court. Within a discretionary system of court member selection that provides opportunity for discrimination,[3] I find that appellant's offer would, *if proved,* have established a *prima facie*[4] case of systematic exclusion of black officers.

## II

In *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), the petitioner alleged that blacks were included on the grand jury list and venire in only token numbers and successfully argued that the grand jury[5] was "impaneled from a venire made up contrary to the requirements of the Equal Protection Clause." *Id.*

at 626–27, 92 S.Ct. at 1223. Alexander demonstrated that: (1) 21.06% of the veniremen pool were black; (2) the jury commission consisted of five members, all white; (3) the commission compiled a list of names from various sources (telephone directory, voter rolls, personal knowledge, etc.) and sent questionnaires to the people on the list; (4) the questionnaires included a space to indicate race; (5) 13.76% of the questionnaires returned were from blacks; (6) the commissioners culled the list to 2000, placed them on a table and randomly selected 400 people of which 6.75% were black; and (7) on Alexander's grand jury venire, one of the twenty persons drawn was black, but none of the twelve people on the grand jury that indicted him was black. Alexander argued that the "substantial disparity between the proportion of blacks chosen for jury duty and the proportion of blacks in the eligible population raises a strong inference that racial discrimination and not chance ... produced this result...." *Id.* at 630, 92 S.Ct. at 1225.

The court, in finding a *prima facie* case of invidious racial discrimination, stated in part:

This Court has never announced mathematical standards for the demonstration of "systematic" exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors. The progressive decimation of potential Negro grand jurors is indeed striking here, but we do not rest our conclusion that petitioner has demonstrated a prima facie case of invidious racial discrimination on statistical im-

---

3. The record does not establish the method by which officers were nominated by subordinate units within M.D.W. for service as court-members. Normal military practice, which I will assume was used in some variation in this case, entails a by-name selection of officers by subordinate commanders of officers they deem best qualified. Nominating officers personally know or review the personnel files of the nominees. The opportunity to discriminate is clearly present. I recognize that appellant made no offer averring that the selection process was not racially neutral or that the process provided a clear opportunity to discriminate. Because the nature of the selection process is common

knowledge within the Army, I find that such an averment is unnecessary.

4. The establishment of a *prima facie* case would shift the burden to the government to prove that the selection process was not discriminatory. *See Batson v. Kentucky,* 476 U.S. 79, 94, 106 S.Ct. 1712, 1721–22, 90 L.Ed.2d 69 (1986).

5. While this case does not involve a petit jury, the principles applied are essentially the same. *See Alexander v. Louisiana,* 405 U.S. at 626 n. 3, 92 S.Ct. at 1223 n. 3.

probability alone, for *the selection procedures themselves are not racially neutral.* The racial designation on both the questionnaire *and* the information card *provided a clear and easy opportunity for racial discrimination.*

*Id.* at 630, 92 S.Ct. at 1225 (emphasis added). The proffer made by the appellant in this case is, if anything, stronger than the allegations in *Alexander:* ten percent of the eligible pool was black and *no* black officers' names were submitted by selecting officials who, as noted *supra,* either personally knew, or had access to information on, the nominee's race. There was here no "progressive decimation" by an occasionally random process; there was an averment of a complete exclusion *ab initio* in a process that precludes random selection. *See* Article 25(d)(2), UCMJ (convening authority must detail "such members ... as in his opinion are best qualified"); R.C.M. 502(a)(1); *United States v. Ryan,* 5 M.J. 97 (C.M.A.1978). *Alexander* establishes that overt statements of discriminatory intent or purpose are not required. Short of such a showing, I can imagine little else that can be shown beyond what was proffered.[6] As stated in *Batson:*

> Since the ultimate issue is whether the State has discriminated in selecting the defendant's venire ... the defendant may establish a prima facie case "in other ways than by evidence of long-continued unexplained absence" of members of his race "from many panels." *Cassell v. Texas,* 339 U.S. 282, 290, 70 S.Ct. 629, 94 L.Ed. 839 (1950) (plurality opinion). In cases involving the venire, this Court has found a prima facie case on proof that members of the defendant's race were substantially underrepresented on the venire from which his jury was drawn, and

that the venire was selected under a practice providing "the opportunity for discrimination." *Whitus v. Georgia,* 385 U.S., at 552, 87 S.Ct. 643 [647]; *see Castaneda v. Partida, supra,* [430 U.S.] at 494, 97 S.Ct. 1272 [1280]; *Washington v. Davis, supra,* [426 U.S.] at 241, 96 S.Ct. 2040 [2048]; *Alexander v. Louisiana, supra,* [405 U.S.] at 629–631, 92 S.Ct. 1221 [1224–26]. This combination of factors raises the necessary inference of purposeful discrimination because *the Court has declined to attribute to chance the absence of black citizens on a particular jury array where the selection mechanism is subject to abuse.* When circumstances suggest the need, the trial court must undertake a "factual inquiry" that "takes into account all possible explanatory factors" in the particular case. *Alexander v. Louisiana, supra,* [405 U.S.] at 630 [92 S.Ct. at 1225].

*Batson,* 476 U.S. at 95, 106 S.Ct. at 1722 (emphasis added). Clearly the offer here contains the first element of proof, i.e., substantial minority underrepresentation on the "venire from which the jury was drawn."

### III

The other factor in the formula for raising an inference of purposeful discrimination is that the venire selection method "provided an opportunity for discrimination." It cannot rationally be contended that the panel selection process in the military does not provide the opportunity for discrimination. As previously noted the process by which court members are nominated and selected is not random but is, rather, a by-name selection during which the race of the prospective member is ei-

---

**6.** The majority cites *United States v. McClain,* 22 M.J. 124 (C.M.A.1986) as delineating the standard by which an allegation of systematic exclusion of a particular groups is tested and states that *McClain* dictates "that an intentional exclusion of a particular group from panel service must be shown." In *McClain* the Court of Military Appeals held that systematic exclusion of enlisted personnel below the rank of E–7 and of junior officers as members of court-martial panels in order to obtain more severe sentences violated Articles 25 and 37 of the Uniform Code

of Military Justice, 10 U.S.C. § 837. The court did not address allegations of discrimination based on race except to cite and comparison-cite several United States Supreme Court cases including *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). The majority's reliance upon *McClain* as establishing a military standard requiring a showing of "intentional exclusion" in cases of racial discrimination is overbroad and disregards clear guidance from the United States Supreme Court.

ther known or easily ascertained. Additionally the military justice system has, in the past, demonstrated its potential for abuse.[7] *See, e.g., United States v. Thomas,* 22 M.J. 388 (C.M.A.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987) (unlawful command influence); *United States v. McClain, supra* (exclusion or replacement of junior members "in order to obtain a court membership less disposed to lenient sentences"); *United States v. Brice,* 19 M.J. 170 (C.M.A.1985) (during court-martial on drug offenses, commanding general/convening authority ordered all officers, including panel members, to attend an address by the Commandant of the Marine Corps which addressed drug problem in military); *United States v. Miller,* 19 M.J. 159 (C.M.A.1985) (accused's company commander communicated his opinion to two fellow officers who sat on panel that accused should receive stern punishment); *United States v. McCarthy,* 2 M.J. 26, 29 n. 3 (C.M.A.1976) ("court members, hand-picked by the convening authority and of which only four of a required five ordinarily must vote to convict ... are a far cry from the jury scheme which the Supreme Court has found to be constitutionally mandated in criminal trials in both federal and state court systems"). The system clearly provides an opportunity to discriminate and has been previously abused. Thus, the appellant's proffer was sufficient.

### IV

Reported military cases prohibit discrimination on the basis of improper criteria. *See United States v. Daigle,* 1 M.J. 139 (C.M.A.1975) (non-selection of warrant officers and lieutenants); *United States v. Smith,* 18 M.J. 704 (A.C.M.R.), *petition denied,* 19 M.J. 215 (C.M.A.1984) (deliberate inclusion of females as court-martial member was proper as opposed to deliberate exclusion of a certain class of person which is a violation of the Equal Protection Clause). The military judge in this case relied on the holding of the Air Force Court

of Military Review in *United States v. Credit,* 2 M.J. 631, 638 (A.F.C.M.R.1976). There, the court held, citing *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), that a claim "that the composition of the court-martial is constitutionally infirm because there were no Negro ... officers included on the panel that was appointed" was without merit. The *Credit* court had before it a verbal assertion that only one black officer was nominated by the subordinate commanders. The court was correct in stating that an absence of blacks on a court-martial panel does not itself establish a constitutional infirmity. There is no constitutional requirement for minority representation at a court-martial. Nor is a law, policy, or procedure "unconstitutional solely because it has a racially disproportionate impact." *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). In this case, however, the defense proffer was considerably more and R.C.M. 912 procedures were available. Accordingly I believe that, under the facts of this case, *Credit* does not apply. *Credit* predates R.C.M. 912 which provides the defense a hearing and opportunity to present evidence upon adequate proffer. Further, as noted *supra,* the Air Force court relied upon *Swain* while we have the benefit of Supreme Court post-*Swain* rulings which alter and expand that case's view of challenges based on racial discrimination. *See Batson, supra; Davis, supra* (accused may make out prima facie case by showing that totality of circumstances in a single case gives rise to inference of discriminatory purpose; burden shifts to government to rebut). We are presented here with an assertion that, based upon appellant's offer of proof, the military judge was required to conduct a hearing and allow presentation of evidence by appellant. I find that, under the facts of this case, a hearing was required and that appellant was denied the opportunity to present evidence and fully develop the record. I respectfully dissent.

---

7. Even absent discriminatory intent, a total absence within M.D.W. of black officer nominees for court member duties is, if true, an indica-

tion of an insensitivity with regard to "public confidence in the fairness of our system" that requires attention.

I would return the record of trial to the Judge Advocate General for remand to the same or a different convening authority for a hearing pursuant to R.C.M. 912(b) allowing appellant to present the evidence proffered at trial and further litigation of that issue if required.