# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.A. FISCHER, D.C. KING**
**Appellate Military Judges**

## UNITED STATES OF AMERICA

v.

## MARCO A. HERNANDEZ
### LANCE CORPORAL (E-3), U.S. MARINE CORPS

### NMCCA 201300313
### GENERAL COURT-MARTIAL

**Sentence Adjudged**: 11 March 2013.
**Military Judge**: LtCol Leon Francis, USMC.
**Convening Authority**: Commanding General, 1st Marine Division (REIN), Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation**: Col S.D. Marchioro, USMC.
**For Appellant**: Gary Myers, Esq.; LT Jennifer Myers, JAGC, USN.
**For Appellee**: LT Ann Dingle, JAGC, USN.

### 23 September 2014

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of violating a lawful order by consuming alcohol, and two specification of sexual assault in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 920. The members sentenced the appellant to confinement for

15 years, total forfeitures, reduction to pay grade E-1, and a dishonorable discharge.  The convening authority approved the sentence as adjudged.[1]

The appellant raises four assignments of error.[2]  After careful examination of the record of trial and the pleadings of the parties, we are satisfied that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

## Background

In May 2012, the appellant attended a party at the house of his neighbor, Corporal RB and his wife, AB.  AB's brother, AW, was staying at the home during this time and invited his girlfriend AK to the party.  The parties drank heavily at the party which resulted in AK needing assistance to the upstairs bedroom where, after vomiting, she fell asleep.  AW sat with AK to ensure her safety should she vomit again in her sleep.  After he determined that AK was "okay," he departed.[3]

Later in the evening, AB opened the door to the bedroom and discovered the appellant on top of AK with both parties pants pulled down.[4]  Although the appellant was making "moaning sounds like they were having sex,"[5] AK was not moving and appeared

---

[1] The convening authority's action erroneously reflects that the appellant was found guilty of a sexual "act" vice "contact" in Specification 2 of Charge II.  The appellant raises no error and we find no prejudice.  However, the appellant is entitled to accurate court martial records.  *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998).  Accordingly, we shall order the necessary corrective action in our decretal paragraph.

[2] I. Whether the military judge abused his discretion by not granting the defense request for expert assistance regarding coercive interrogation techniques?
 II. Whether the military judge erred by not staying or dismissing the proceedings in light of the improper panel selection by the convening authority?
 III. The Commandant of the Marine Corps widely publicized his preferred outcome for sexual assault cases.  His actions were actual and apparent unlawful command influence that impacted the members in this case and prejudiced the appellant.
IV. Whether the appellant's sentence is excessive?

[3] Record at 772-73.

[4] *Id*. at 809.

[5] *Id*.

2

unconscious. AB ran downstairs and reported what she saw to her brother who ran to the bedroom, pulled the appellant off of AK, and hit him several times. Eventually, law enforcement arrived on scene and began questioning AK, during which time she remained inattentive, continually tried to go back to sleep, and vomited once more.[6]

A few days later, Naval Criminal Investigative Service (NCIS) Special Agent (SA) Concepcion and another agent went to the brig, where the appellant had been placed in pretrial confinement. The appellant was then brought into the interview room in "good spirits" and "well-rested."[7] After introductions, the appellant waived his Article 31(b), UCMJ, rights and agreed to speak to the NCIS agents. The appellant initially explained that he went into the upstairs bedroom to calm a sleeping toddler who was in a crib. While in the bedroom, AK pulled on his leg to get his attention and invited him to lay on the floor with her. After lying down next to AK, the two engaged in consensual sexual intercourse. Finally, the appellant claimed that AW burst into the room and hit him, after which the appellant walked home.

SA Concepcion challenged the appellant's story, after which the appellant admitted that he had lied. The appellant then provided a written statement wherein he claimed that he entered the room, noticed AK sleeping, said a few words to her, removed her pants and inserted his penis into her vagina. He recalled that AK put her arms around him and "said some words."[8]

Several days later, SA Concepcion received a request from the Government to re-interview the appellant to have him elaborate on whether the appellant believed AK was asleep. During this videotaped interview, SA Concepcion attempted several times to have the appellant admit that AK was unconscious at the time of penetration. However, the appellant vacillated between admitting AK was asleep and claiming that she was semi-conscious.

Prior to trial, the defense made a timely motion to compel an expert consultant in the field of law enforcement interrogation techniques. The defense argued that this expert was necessary to, *inter alia*, "educate the defense on the

---

[6] *Id.* at 960, 861.

[7] *Id.* at 1073.

[8] Prosecution Exhibit 1.

3

coercive nature of techniques utilized by law enforcement when eliciting a confession."[9]  The military judge denied the request, concluding that the subject matter of the consultation would be "irrelevant and unnecessary."[10]

## 1.  Denial of Expert Assistance

In his first assignment of error, the appellant argues that the military judge abused his discretion by denying the defense request for expert assistance regarding coercive interrogation techniques.

An accused is entitled to expert assistance before trial to aid in the preparation of his defense upon a demonstration of necessity.[11]  We review a military judge's denial of expert assistance for an abuse of discretion,[12] but grant relief only if that abuse "materially prejudices the substantial rights of the accused."[13]

The defense sought to compel the Government to appoint Dr. Streed as an expert consultant in the field of police interrogations, offering evidence that the appellant was unable to remember certain events and was compliant to facts suggested to him during his interrogations.  Assuming arguendo that the military judge abused his discretion, we find no prejudice.

Despite the military judge's denial, the record indicates the appellant was able to fully avail himself of Dr. Streed's services.  In a letter provided prior to trial, Dr. Streed sets forth that he was able to review the statements of AK and of the appellant, the NCIS's investigative reports, the transcript of the NCIS interrogation of the appellant, the defense motion to produce him as an expert witness, and transcripts of the NCIS SAs' testimony at the Article 32 hearing.  Moreover, Dr. Streed set forth specific concerns he had regarding the appellant's statement.

Dr. Streed went on to discuss how suggestibility may have impacted the appellant's statements, and concluded by listing

---

[9] Appellate Exhibit VII at 3.

[10] AE XXXVIII at 8.

[11] *United States v. Bresnahan*, 62 M.J. 137 (C.A.A.F. 2005).

[12] *Id.*

[13] Art. 59(a), UCMJ.

4

the factors he believed may have impacted the appellant's statement to NCIS. Finally, Dr. Streed watched the interrogation video and was present at trial. As a result, defense counsel conceded that Dr. Streed "knows about this case . . . [h]e's got an opinion on what was done in this case every step of the way."[14] Taking these facts into account, we conclude that the defense in fact utilized Dr. Streed as an expert consultant, and find no prejudice to the appellant.

## 2. Improper Panel Selection

The appellant requested to be tried by members including enlisted representation. As a result, the convening authority was presented with a roster that contained officers in the ranks of O-3 and above and enlisted Marines in the ranks of E-7 and above. The convening authority selected only two individuals from this roster. In addition, the convening authority selected five members of the Headquarters element, and two commanding officers within the Division. The final panel consisted of two colonels, two lieutenant colonels, one captain, and four Master gunnery sergeants. The appellant asserts the fact that the convening authority utilized the roster and the fact that the final panel included only very senior members, indicates the convening authority improperly excluded members of lower ranks.

Whether a panel is properly selected is a matter of law reviewed *de novo*.[15] Article 25(d)(2), UCMJ sets forth that the "convening authority shall detail as members [of a court martial] such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Military courts have routinely held that members may not be selected solely on the basis of their rank.[16] Thus, while it is permissible to appoint senior, qualified court members,[17] the lower grades may not be systematically excluded.[18]

While we recognize that "[w]hen rank is used as a device for deliberate and systematic exclusion of qualified persons, it

---

[14] Record at 1143.

[15] *United States v. Gooch*, 69 M.J. 353, 358 (C.A.A.F. 2011).

[16] *United States v. Nixon*, 33 M.J. 433, 434 (C.M.A. 1991).

[17] *United States v. White*, 48 M.J. 251 (C.A.A.F. 1998).

[18] *United States v. McClain*, 22 M.J. 124, 129-30 (C.M.A. 1986).

becomes an irrelevant and impermissible basis for selection,"[19] we concur with the military judge and find no evidence of such an improper exclusion in this case. The record indicates that the convening authority was advised of the Article 25 criteria and that he could "select as a member any service member in 1st Marine Division that is senior to the accused who you believe best meets the criteria in the reference."[20] Even if the roster did improperly exclude members of lower ranks, the fact that the convening authority selected seven names not listed on the roster clearly indicates that he did not feel constrained by the roster. Further, since every member selected was either a member of the headquarters element or a commanding officer within the Division, it is a reasonable inference that the convening authority knew each member and properly applied the Article 25 factors to their selection.

The appellant relies upon *McClain* to argue that a panel made up solely of senior officers and enlisted members was improper. *McClain* does not stand for that proposition. In *McClain*, the court found that "the staff judge advocate intended to exclude junior members because he believed they were more likely to adjudge light sentences."[21] There is no evidence of similar improper motives in this case. Accordingly, we find no error.

### 3. Unlawful Command Influence

Next, the appellant argues that his trial was affected by unlawful command influence (UCI) flowing from statements the Commandant of the Marine Corps (CMC) made in a series of lectures known as the "Heritage Briefs." The appellant claims that the CMC's comments caused both actual and apparent UCI.

UCI is "the mortal enemy of military justice."[22] Article 37(a), UCMJ, states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case." The

---

[19] *Id.* at 129-30.

[20] AE LXXX at 68.

[21] *McClain*, 22 M.J. at 129.

[22] *United States v. Gore*, 60 M.J. 178, 178 (C.A.A.F. 2004) (quoting *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986)).

mere appearance of UCI may be "as devastating to the military justice system as the actual manipulation of any given trial."[23]

To raise the issue of UCI at trial, the defense is required to present "'some evidence'" of UCI.[24] Once the defense has done so, the Government must then, beyond a reasonable doubt, either: (1) disprove the predicate facts on which the allegation of UCI is based; or (2) persuade the military judge that the facts do not constitute UCI; or (3) prove at trial that the UCI will not affect the proceedings.[25]

This court is concerned not only with eliminating actual UCI, but also with "eliminating even the appearance of [UCI] at courts-martial."[26] Once apparent UCI is raised, the Government bears the burden of convincing us beyond a reasonable doubt that "an objective, disinterested observer, fully informed of all of the facts and circumstances," would not harbor a significant doubt about the fairness of the proceedings.[27] We review a military judge's ruling on UCI *de novo*.[28] We review on appeal whether UCI affected the findings or the sentence *de novo*.[29]

Here, the parties litigated the issue of UCI at trial and the military judge entered findings of fact and conclusions of law wherein he found the defense presented no evidence of actual UCI but that the Heritage Brief was "some evidence" of apparent UCI.[30] The military judge further concluded that the Government showed "beyond a reasonable doubt that the apparent UCI has not prejudiced the accused at this stage of the proceedings."[31]

---

[23] *United States v. Ayers*, 54 M.J. 85, 94-95 (C.A.A.F. 2000) (citation and internal quotation marks omitted).

[24] *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (quoting *United States v. Ayala*, 43 M.J. 296, 300 (C.A.A.F. 1995)).

[25] *Id*. at 151.

[26] *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006) (quoting *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979)).

[27] *Id*.

[28] *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013).

[29] *Biagase*, 50 M.J. at 150-51.

[30] AE LXXXIX at 7.

[31] *Id*. at 8.

Prior to *voir dire*, the military judge required the members to each read a copy of White Letter 3-12, wherein the CMC explained that the Heritage Brief was not designed to influence any Marine's decision at courts-martial or boards of inquiry and informed them that they had an "inherent responsibility to ensure the sanctity of our justice system, this includes the presumption of innocence unless proven otherwise."[32]  During the ensuing *voir dire*, the members agreed that they: (1) could follow the military judge's instruction on presumption of innocence and reasonable doubt; (2) did not have a set sentence in their minds; (3) would give fair consideration to the entire range of punishment; (4) had not formed an opinion about the sentence that should be awarded in this case; (4) had all seen or heard the Heritage Brief; and (5) would all exercise their own independent judgment.  Moreover, the members disclaimed "outside pressure to make certain findings" based upon the Heritage Brief; denied thinking that the Heritage Brief pressured them to impose a particular sentence; agreed to base the sentence on the evidence presented and not the comments made by the CMC; agreed that they could be impartial despite the Heritage Brief; and agreed that anything the CMC said or inferred in the Heritage Brief was not relevant to the appellant's case.

At the close of *voir dire*, the military judge heard argument on the UCI motion and found that "a disinterested observer, hearing of the [CMC's] comments concerning sexual assault and the criticism of the outcomes of certain cases could harbor significant doubts as to the fairness of the proceedings in the [appellant's] case, since all of the members heard the speech in some form."[33]  However, the military judge found beyond a reasonable doubt that "UCI has not prejudiced the [appellant] at this stage of the proceedings.[34]  Nonetheless, and to "ensure that the apparent UCI does not affect the proceedings," the military judge granted the defense an additional preemptory challenge.[35]  At the close of *voir dire*, the defense raised four challenges for cause, none of which were on grounds of UCI. Three of the challenged members were excused.

---

[32] AE LXXXVII at 1.

[33] AE LXXXIX at 7.

[34] *Id.* at 8.

[35] *Id.*

We find that the military judge's questions--and the members' responses[36] wherein they disavowed that the CMC's comments would have any impact on them--coupled with the reading of White Letter 3-12, sufficiently ameliorated cause for the disinterested public to harbor significant doubt about the fairness of the proceedings.

## 4. Sentence Appropriateness

In his last assignment of error, the appellant asserts that his sentence to confinement for 15 years is "highly disparate" when compared to sentences awarded in "closely related cases," despite the lack of aggravating factors and a "clean and honorable" record.[37]  The appellant offers seven military cases that involve a sexual assault of a victim incapacitated by alcohol, none of which received a sentence of more than five years.[38]

A court-martial is free to impose any lawful sentence that it determines appropriate.[39]  "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves."[40]  This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'"[41]  After reviewing the entire record, including the appellant's combat record, we find that the sentence is appropriate for this offender and his offenses.[42]

---

[36] The Heritage Brief questions were put to the panel *en banc*, requiring only that the panel members provide yes or no responses, as indicated by raising their hands or not.  We note that this is not the optimum process for thoroughly exposing, and therefore ameliorating, concerns such as apparent UCI.

[37] Appellant's Brief of 10 Jan 2014 at 30.

[38] *Id.* at 26-29.

[39] *United States v. Turner*, 34 C.M.R. 215, 217 (C.M.A. 1964).

[40] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[41] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 10 C.M.A. 102, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

[42] *United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005); *Healy*, 26 M.J. at 395-96; *Snelling*, 14 M.J. at 268.

**Conclusion**

The findings and sentence as approved by the convening authority are affirmed.  The supplemental court-martial order will reflect sexual "contact" instead of sexual "act" in Specification 2 of Charge II.

For the Court


R.H. TROIDL
Clerk of Court